FILED
 2006 May-18 PM 12:58
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VONDREAL MITCHELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 2:04-CV-415-RDP-TMP |
| ) | |
| GRANT CULLIVER, Warden; and ) | |
| the ATTORNEY GENERAL OF ) | |
| THE STATE OF ALABAMA, ) | |
| ) | |
| Respondents. ) | |

## ORDER DISMISSING *HABEAS* PETITION

The Magistrate Judge filed his Report and Recommendation in this case on April 5, 2006, recommending that all four of Petitioner's claims addressed therein be dismissed. After being granted an extension of time to object, Petitioner filed his objections to the Report and Recommendation, arguing that the Magistrate Judge improperly failed to consider the claims asserted in his original Petition for *habeas* relief. Under the circumstances presented here, the court does not believe the Magistrate Judge improperly failed to consider all of Petitioner's claims.

Petitioner filed his original Petition for relief under 28 U.S.C. § 2254 on March 1, 2004, setting forth the following claims:

1. Petitioner did not receive valuable impeachment evidence relating to the criminal history of the state's principle witness, Elvie Lewis Branch, until after trial.

2. The state failed to disclose to Petitioner, before the state court trial, evidence relating to a statement he purportedly made around the time of the offense.

3. Admission of testimony concerning Petitioner's prior possession of a gun violated Alabama Rule of Evidence 404(b).

4. There was insufficient evidence to support his convictions for murder and attempted murder.

5. The affirmance of the trial court's denial of Rule 32 relief by the Alabama Court of Criminal Appeals on a different ground than that articulated by the trial court violated Petitioner's right to due process.

6. Petitioner received ineffective assistance of trial counsel because:

   (A) Counsel failed to object to the testimony concerning his prior possession of a gun, which testimony violated Alabama Rule of Evidence 404(b).

   (B) Counsel failed to properly argue why Petitioner should be allowed, over the state's objection, to offer testimony as to why a certain evidence technician no longer was employed by the Birmingham Police Department.

   (C) Counsel failed to object to voir dire of the jury without the jury venire being sworn on oath.

   (D) Counsel failed to object to the state's striking for cause jurors who expressed an unwillingness to vote for the death penalty.

   (E) Counsel failed to object to a break in the "chain of custody" with respect to a physical exhibit admitted into evidence.

   (F) Counsel failed to object to the state's failure to "tender" Dr. Brissie as an expert witness.

7. Petitioner received ineffective assistance of appellate counsel because:

   (A) Counsel failed to assure that a complete record was transmitted to the Alabama Court of Criminal Appeals in that an exhibit to Petitioner's motion for new trial was omitted from the appellate record.

   (B) Counsel failed to raise on appeal the issue of the prosecutor improperly appealing to the jury's "community spirit" to return a guilty verdict.

   (C) Counsel failed to raise on appeal the issue that the guilty verdict was against the weight of the evidence.

After the Respondents filed an answer to the Petition, Petitioner filed a motion on January 18, 2005, for leave to "amend habeas Petition," attaching to the motion a complete and new *habeas* Petition setting forth four claims entirely different from those alleged in the original Petition. The Magistrate Judge entered an order on March 8, 2005, seeking clarification of the intended purpose of the amendment. In pertinent part, the order read:

> On January 18, 2005, the petitioner filed his "Motion Requesting Permission to Amend Habeas Corpus Petition and Extend Time for Filing Response After Judgment." The motion is unclear, however, whether petitioner wishes to replace his original petition with the amended petition, or whether he wishes merely to add the claims in the amended petition to those in the original. Petitioner is DIRECTED to notify the court within ten (10) days after this Order whether he intends the amended petition to replace and supplant the original petition filed March 1, 2004, or merely to add new claims to the original. Failure to respond to this Order may result in the dismissal of all petitions for want of prosecution.

After being granted several extensions of time to respond to the order, Petitioner responded on August 30, 2005, simply reiterating the same four claims alleged in the Amended Petition. His response did not address directly the question posed by the Magistrate Judge, and, other than restating the four amended claims, he did not indicate that he still was pursuing the claims in the original Petition. The Magistrate Judge took Petitioner's response as an indication that he intended the Amended Petition to supplant the original Petition.[1] In two subsequent orders, on September 9 and October 7, 2005, the Magistrate Judge noted that Petitioner's response to the order for clarification was to do nothing more than reiterate the four claims in the Amended Petition.

After receiving a supplemental answer from Respondents, the Magistrate Judge prepared the Report and Recommendation, addressing only the four claims set out in the Amended Petition.

---

[1] This was not an unreasonable understanding of the circumstances. For the reasons explained below, many of the claims asserted in the original Petition were patently meritless, so that it was not unreasonable to assume that Petitioner wished to replace them with more tenable claims.

3

Under the circumstances, the Magistrate Judge properly and reasonably attempted to determine what claims Petitioner had raised, and concluded that he sought only to press those filed in the amendment. The Magistrate Judge did not improperly ignore any of Petitioner's claims, but, rather, dealt with those claims it appeared Petitioner wished to have considered. The fact that he now complains that the claims alleged in his original Petition were not considered speaks more to the clarity (or lack thereof) of his Petition – at least as it relates to his characterization now of the original and/or amended Petition – rather than whether the Magistrate Judge reasonably attempted to identify the claims Petitioner was asserting and to address those claims.

But even if the Magistrate Judge had considered the claims (as now characterized by Petitioner) in the original Petition as well as those in the Amended Petition, Petitioner would not be entitled to *habeas* relief. That is because the claims in the original Petition were either procedurally defaulted or meritless. The claim that Petitioner did not receive a witness's Michigan criminal history for impeachment purposes until after trial asserts neither a Brady/Giglio claim nor a claim of newly discovered evidence. On direct appeal, the Alabama Court of Criminal Appeals refused to consider the issue because Petitioner failed to make the "new evidence" part of the record. Thus, for federal *habeas* purposes, the claim is procedurally defaulted. Furthermore, even if not defaulted, the claim that the shooting victim's criminal record from Michigan would so impeach his first-hand account of being shot by Petitioner and his accomplice is meritless. Even if Petitioner had been able to put before the jury the victim's Michigan criminal history, there is no basis to find that it would not have changed the outcome of the trial, such that the unavailability of the criminal record denied Petitioner due process.

Petitioner's claims 2 and 3 are equally meritless. His claim that the prosecution failed to disclose to him a pre-trial statement he made does not amount to a Brady claim. First, as it was his statement, he certainly must have been aware of it. Second, and in any event, it did not truly involve a statement as much as an eyewitness account of an event. Petitioner claims that the state offered the testimony of a witness who said that, prior to the shooting, she saw Petitioner and his accomplice outside the victims' apartment and that when she looked in his direction, he said, "Don't even look like that." The testimony related to the events outside the apartment, not to the content of the "statement" by Petitioner. Such eye-witness testimony, hardly being exculpatory, was not required to be disclosed before trial by the prosecution. Claim 3 asserts that the trial court violated *state* evidentiary law by allowing into evidence testimony relating to Petitioner's previous possession of a weapon. First, this claim fails to state a violation of a *federal* constitutional right, and, second, the Alabama Court of Criminal Appeals found that the claim was not preserved for appellate review and, thus, it was procedurally defaulted.

Claims 4 is meritless because there plainly was sufficient evidence to support the conviction. The Alabama Court of Criminal Appeals described the evidence at trial this way:

> On May 15, 1999, Lewis Branch was staying with his friend Andrew Tyree at the D'Orleans apartment complex in Birmingham, Alabama. Branch left a party at around 10:45 p.m. that night to return to Tyree's apartment. At a little after 11:00, after talking with Tyree, Branch went to sleep on Tyree's couch. Branch was awakened by a shotgun blast. Branch testified that he saw Tyree on his knees on the floor, holding his stomach, and Michael Eaton standing in the apartment, holding a shotgun. Tyree managed to get out of the apartment and stagger to the bottom of the steps where he died from the injuries caused by the gunshot. After Tyree left the apartment, Eaton shot Branch three times as he lay on the couch, with the third shot knocking Branch off of the couch onto the floor. Branch played dead. Eaton then stood over him and hit him in the back of the head with the shotgun, yelling, "Die, bitch-ass nigger, die." (R. 737.) Branch testified that, when Eaton finished assaulting him, Mitchell then stood over him and went through his pockets. Mitchell took

>Branch's wallet and $1000 cash from his pockets. After Mitchell and Eaton left the apartment with Branch's wallet, cash, and shoes, Branch went to a neighbor's apartment for help. Branch laid [sic] on the balcony until the paramedics arrived and took him to UAB hospital.

Certainly, Branch's eye-witness account of his own and Tyree's shootings, including his ability to identify the perpetrators, was sufficient to support the conviction.

Claim 5 simply fails to state a claim for *habeas* relief. Shortcomings in the post-conviction collateral proceedings in state court fail to implicate the constitutional validity of the conviction. Spradley v. Dugger, 825 F.2d 1566 (11th Cir. 1987).

Regarding Claim 6, the Alabama Court of Criminal Appeals addressed the merits of each of Petitioner's claims of ineffective assistance of counsel, reasoning as follows:

>An appellant claiming that his counsel's conduct was ineffective must satisfy the stringent test articulated by the United States Supreme Court in Strickland v. Washington, 466 U. S. 668 (1984). The appellant must show (1) that his counsel's performance was deficient, and (2) that he was prejudiced by the deficient conduct, to the extent that, but for the deficient conduct of counsel, the outcome of the case would have been different. When reviewing a claim of ineffective assistance of counsel, this Court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So. 2d 6 (Ala. Crim. App. 1992).
>
>Our review of the record reveals that Mitchell has made only bare allegations regarding the alleged ineffective assistance of counsel, and has failed to show how he was prejudiced. "A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." Rule 32.6(b), Ala. R. Crim. P.
>
>Mitchell argues that his trial counsel was ineffective for failing to object to the testimony of a State's witness that he had seen Mitchell in possession of a pistol in the days before the murder. However, Mitchell fails to show that he was so prejudiced by this testimony, that the results of his trial would have been different if the objectionable evidence had not been admitted, as per Rule 404(b), Ala. R. Crim. P. Moreover, "[o]bjections to testimony are trial strategy, and absent a clear showing of improper or inadequate representation, are to be left to the judgment of trial counsel." Ziegler v. State, 443 So. 2d 1303, 1307 (Ala. Crim. App. 1983).

>Mitchell also argues that his trial counsel was ineffective for failing to cross-examine an evidence technician, James Logan, regarding the circumstances surrounding the dismissal of another evidence technician who processed the crime scene with Logan. As no murder weapon was ever recovered from the crime scene, Mitchell cannot contend he was prejudiced by the manner in which the crime technicians worked the murder scene. No evidence was gathered from the crime scene which pointed to the identity of the shooter; therefore, Mitchell suffered no prejudice by the introduction of the shell casing into evidence. Moreover, trial counsel's method of cross-examination is considered a strategic decision. "Strategic decisions at trial are left to the judgment of counsel and 'do not result in ineffective assistance, whether right or wrong.' Brownlee v. State, 666 So. 2d 91, 97 (Ala. Crim. App. 1995)(quoting Maxwell v. State, 620 So. 2d 93, 97 (Ala. Crim. App. 192).
>
>Mitchell also argues that his trial counsel was ineffective either for failing to object to the jury venire not being sworn, and for failing to object to the prosecutor's "death qualification" of the jury. A petitioner's claim that the jury venire was not sworn is non-jurisdictional and waivable. Fortner v. State, 825 So. 2d 876, 879 (Ala. Crim. App. 2001). Because such a claim is non-jurisdictional, Mitchell must show that he was prejudiced by the failure to have the venire sworn. Mitchell did not receive the death penalty, but was sentenced to life in prison without parole. Therefore, Mitchell cannot show that he was prejudiced by the "death qualification" of the jury.
>
>Mitchell argues that his trial counsel was ineffective for failing to object to the introduction into evidence of a shell casing found at the murder scene, on the grounds of chain of custody. However, because no evidence was ever recovered from the crime scene which pointed to the identity of the shooter, Mitchell cannot show that he was prejudiced by the introduction of the shell casing into evidence.
>
>Mitchell next contends that his trial counsel was ineffective in failing to object to the qualification as an expert of the State's forensic examiner. Dr. Robert Brissie testified at trial as to the extent of the victim's injuries, and to the cause of death; he did not testify to the identity of the shooters. Therefore, Mitchell has failed to show that he suffered any prejudice as a result of Brissie's testimony.

Under 28 U.S.C. § 2254(d), those conclusions are entitled to a presumption of correctness unless they are "contrary to" or an "unreasonable application of" Supreme Court precedent. This court cannot say that these conclusions are either contrary to the standards in Strickland v. Washington, 466 U.S. 668 (1984), for analyzing claims of ineffective assistance, or an unreasonable application of it. Thus, Petitioner is not entitled to *habeas* relief on these claims.

7

Finally, regarding Claim 7, the Alabama Court of Criminal Appeals also addressed Petitioner's claims of ineffective assistance of appellate counsel. Addressing his three claims of appellate ineffectiveness, the state appeals court wrote:

> Mitchell argues that his appellate counsel was ineffective for failing to raise on appeal trial counsel's ineffectiveness in failing to include certain newly-discovered evidence with Mitchell's motion for a new trial. The record reveals that this newly-discovered evidence is the Michigan arrest record of the State's eyewitness, Lewis Branch. Mitchell appears to claim that his motion would have been successful if the arrest record had been included in the motion for a new trial. This claim is nothing but mere conjecture.
>
> Lewis Branch testified that he was asleep in Andrew Tyree's apartment when Mitchell and his co-defendant, Michael Eaton, burst into the apartment and began shooting. Branch testified that Eaton shot Tyree several times and then turned the gun on him. After Branch had been shot three times, he lay on the floor pretending to be dead. Eaton then stood over him and hit him in the back of the head with a shotgun. Branch testified that when Eaton finished assaulting him, Mitchell stood over Branch and rifled through his pockets, taking his wallet and $1000 cash. Mitchell has failed to show that Branch's arrest record would have been so damaging to the State's case-in-chief that a new trial would have been ordered. Therefore, we cannot say that, but for the alleged ineffective assistance of counsel, there was a sufficient probability that the outcome of Mitchell's trial, and his resulting conviction, would have been different.
>
> Mitchell next argues that his appellate counsel was ineffective for failing to argue on direct appeal that a portion of the prosecutor's closing argument was improper. Mitchell maintains that his trial counsel objected to the fact that the prosecutor had made an improper appeal to the "community spirit" of the jury in his closing argument, but that his appellate counsel was ineffective for failing to raise this issue on appeal. We note that the transcript of the closing arguments is not contained in the appellant's Rule 32 petition. Therefore, we cannot determine that the prosecutor's closing arguments were improper, and that Mitchell's appellate counsel was ineffective for failing to raise the issue on appeal. This Court cannot presume error from a silent record; it is the defendant's duty to provide this Court with a complete record on appeal. Rogers v. State, 819 So. 2d 643, 655 (Ala. Crim. App. 2001). Moreover, an attorney is not required to raise every conceivable claim available at trial or on appeal in order to render effective assistance. Thomas v. State, 766 So. 2d 860, 876 (Ala. Crim. App. 1998), aff'd, 766 So. 2d 975 (Ala. 2002); Holladay v. State, 629 So. 2d 673, 679 (Ala. Crim. App. 1992).

8

> Mitchell also argues that his appellate counsel was ineffective for failing to raise on direct appeal the trial counsel's ineffectiveness for failing to object to the weight of the State's evidence at the close of the trial. We concluded on direct appeal that the State presented sufficient evidence to sustain Mitchell's conviction. Because Mitchell has failed to establish that the jury's verdict was contrary to the law or the weight of the evidence, Mitchell's counsel cannot be ineffective for failing to raise this claim. It is not the province of the court to reweigh the evidence presented at trial. Johnson v. State, 555 So. 2d 818, 820 (Ala. Crim. App. 1989).

The resolution of these issues, even assuming they raise claims under federal law, is not contrary to or an unreasonable application of Supreme Court precedent relating to ineffective assistance of appellate counsel. This court agrees that Petitioner suffered no identifiable prejudice from his counsel's failure to include in the appellate record a copy of Branch's Michigan arrest record, or his failure to raise on appeal an objection concerning the "community spirit" argument of the prosecutor, or his failure to argue on appeal that the conviction was contrary to the weight of the evidence. Petitioner is not entitled to federal *habeas* relief on any of these grounds.

In summary, the court finds that the Magistrate Judge's consideration of only those claims in Petitioner's Amended Petition was proper under the circumstances indicating that the Magistrate Judge reasonably attempted to have Petitioner clarify the claims he sought to press. Furthermore, even if those claims in the original Petition had been addressed by the Magistrate Judge, none of them merited *habeas* relief. Accordingly, Petitioner's objections to the Report and Recommendation are **OVERRULED**, and the Magistrate Judge's Report and Recommendation is due to be and hereby is **ADOPTED** and the Recommendation is **ACCEPTED**. Therefore, the Petition for writ of *habeas corpus* is due to be and hereby is **DENIED** and **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to mail a copy of the foregoing to Petitioner.

**DONE** and **ORDERED** this      18th      day of May, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE